**Jennifer CUSHMAN, Plaintiff,**

v.

**TRANS UNION CORP., Defendant.**

**No. 95–CV–1743.**

United States District Court,
E.D. Pennsylvania.

March 29, 1996.

Scott D. Godshall, Eric Rothschild, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Plaintiff.

Mark E. Kogan, Bruce S. Luckman, Marion, Satzberg, Trichon & Kogan, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

### INTRODUCTION

We address today the motion for summary judgment filed by the defendant, Trans Union Corporation ("Trans Union"), in this case arising under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t (the "FCRA"). The plaintiff in this action, Jennifer Cushman, alleges that an unknown third party used her identifying information to open credit card accounts with American Express ("AmEx"), Citibank Visa ("Citibank"), and Chase Manhattan Bank ("Chase") (collectively, the "creditors"). The cards were used, without Ms. Cushman's knowledge or approval, to charge approximately $2,200 in goods and services. When no payment was made on the accounts, the creditors notified Trans Union, which has since published credit reports stating that Ms. Cushman defaulted on three credit card accounts.

On September 15, 1994, Ms. Cushman contacted Trans Union, informing it that a third party had opened the accounts in her name and requesting that the disputed entries be purged from the credit report. Trans Union investigated the matter by re-verifying the identifying information with the three creditors and inquiring whether the consumer had reported that the account in question had been opened fraudulently. AmEx and Chase notified Trans Union that they had not received any such notification, and that the identifying information was accurate. Thus, Trans Union declined to purge the credit report of the AmEx and Chase entries. The Citibank entry was purged after it could not be verified.[1]

On November 2, Ms. Cushman again contacted Trans Union to dispute the credit report, offering to provide "whatever affidavits are necessary" to rid the report of the disputed entries. Trans Union confirmed that there had been no fraud reported with respect to the Chase account. As for the AmEx account, Trans Union conducted the same investigation it had undertaken in response to the first inquiry. Once it determined that the identifying information was accurate and that there had been no report of fraud submitted regarding the accounts, Trans Union concluded its investigation.

Ms. Cushman filed the instant complaint on March 24, 1995, in which she asserts primarily that Trans Union failed to reinvestigate the matter in accordance with the FCRA's dictates. Ms. Cushman also seeks relief pursuant to Vermont's Fair Credit Reporting Act and under the tort theory of defamation. After discovery was taken, Trans Union filed the instant motion, in which it argues that it is entitled to summary judgment on the following grounds: (1) that in light of the record generated during discovery, its investigative procedures were indisputably within the FCRA's bounds; and (2) that Ms. Cushman has failed to advance facts to support the inference that she incurred harm as a result of Trans Union's conduct. Finally, Trans Union argues that there is no evidence to support the inference that Trans Union acted with malice or with the specific intent to injure Ms. Cushman. Thus, it contends that the FCRA preempts the defamation claim, and that the evidence does not support a punitive damages award. We turn now to address Trans Union's motion.

### STANDARD OF REVIEW

Under our rules of civil procedure, we are authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues

---

1. After the commencement of this lawsuit, Trans Union investigated and confirmed the Citibank entry, which was consequently placed back onto Ms. Cushman's credit report.

to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2511). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## ANALYSIS

The FCRA was enacted to protect consumers from the inclusion of inaccurate information in reports used to evaluate their creditworthiness. § 1681(b). Thus, it allows consumers to recover compensatory damages and costs, including a reasonable attorney's fee, in the event that a consumer reporting agency negligently fails to comply with any of the FCRA's requirements. § 1681o. If the consumer reporting agency's non-compliance with the FCRA is willful, the consumer may also recover punitive damages. § 1681n. In the instant case, Ms. Cushman alleges that Trans Union acted in violation of § 1681i, which provides, in relevant part, as follows:

> If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by a consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information.... If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information.

15 U.S.C. § 1681i(a).

■ The question the court must consider in a case brought pursuant to § 1681i(a) is "whether the credit reporting agency could have discovered an error in a particular report through a reasonable inves-

tigation." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). The scope of the agency's duty to reinvestigate depends upon (1) the cost of verifying the accuracy of the source versus the potential harm to the consumer; and (2) the extent of the information the credit reporting agency possesses. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir.1994). Thus, a credit reporting agency generally has no duty to reinvestigate unless and until the consumer notifies it that the credit report contains inaccurate information. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir.1995) (citations omitted). Once the credit reporting agency receives such notice, however, it may be required to conduct a more thorough investigation, one that requires it to make inquiries beyond the original source of the information. *See Henson*, 29 F.3d at 286–87 ("When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation."). Indeed, in *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F.Supp. 972 (M.D.Fla.1985), the court concluded that the credit reporting agency could not rely merely on the information provided by the creditor once it becomes aware that the consumer disputes the report's accuracy. *Id.* at 976.

■ In support of the instant motion, Trans Union contends that its only obligation under the FCRA is to report the information provided by the creditors. The cases cited above make clear, however, that Trans Union may have been obliged to conduct a more thorough investigation in light of Ms. Cushman's protestations. As we noted above, the decisive inquiry is whether Trans Union could have determined that the accounts were opened fraudulently if it had reasonably investigated the matter. Ms. Cushman has produced evidence to suggest that Trans Union could have obtained copies of the credit applications and sales slips, items that could have assisted it in addressing Ms. Cushman's dispute. Trans Union has not offered evidence sufficient for us to conclude that such an investigation would irrefutably have been unreasonable. Thus, we cannot say that no reasonable investigation would have revealed

the inaccuracy. Accordingly, we must conclude that an award of summary judgment is unwarranted.

Likewise, we must decline to award summary judgment in Trans Union's favor on the grounds that Ms. Cushman has failed to raise a material issue of fact regarding damages. Trans Union contends that it is entitled to summary judgment since Ms. Cushman was never denied credit on the basis of a Trans Union credit report. The FCRA does not restrict the damages a plaintiff can recover to those based on a denial of credit, however. Indeed, as the Fifth Circuit Court of Appeals has observed, "damages include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses." *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir.1993). Here, Ms. Cushman has put forth evidence that she incurred stress-induced medical maladies as a result of the negative credit report. Accordingly, she has raised a disputed issue of fact as to damages, compelling us to deny Trans Union's motion.

Alternatively, Trans Union asks us to award it summary judgment as to both the defamation claim and the request for punitive damages under § 1681n. The FCRA provides that a consumer cannot bring a defamation action under the instant circumstances unless it can show that the credit reporting agency reported the false information "with malice or willful intent to injure" the consumer. § 1681h(e). It is not necessary for the plaintiff to produce a "smoking gun" or other form of definitive proof of the defendant's malicious intent. Instead, "where intent has not been explicitly expressed, the trier of fact may deduce it from the surrounding circumstances." *Mirocha v. TRW, Inc.*, 805 F.Supp. 663, 675 (S.D.Ind. 1992). In the present case, Ms. Cushman has produced evidence suggesting that Trans Union failed to reinvestigate the matter to the extent of its statutory duty after Ms. Cushman had twice alerted it to the possibility of the report's inaccuracy. We are satisfied that a jury could reasonably conclude that Trans Union did so willfully. Accordingly, we will allow Ms. Cushman to present her evidence on these issues to a jury.

*CONCLUSION*

For the reasons stated above, Trans Union's motion for summary judgment will be denied.